IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH ROSEBROOK, | ) | CASE NO. 1:19CV903 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN JAMES HAVILAND, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Joseph Rosebrook ("Petitioner" or "Rosebrook") brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  Doc. 1.  Rosebrook is detained at the Allen-Oakwood Correctional Institution, having been found guilty by a Geauga County, Ohio, Court of Common Pleas jury of conspiracy to commit aggravated murder, two counts of aggravated murder, two counts of kidnapping, and multiple firearm specifications.  *State v. Rosebrook*, Case No. 15-C-000116 (Geauga Cty. Common Pleas Ct., filed October 21, 2016).  At sentencing, the trial court merged the applicable counts and sentenced Rosebrook to an aggregate prison sentence of life without parole.  Doc. 8-1, pp. 44-46.[1]

On April 16, 2019, Rosebrook filed a Petition for Writ of Habeas Corpus setting forth three grounds for relief.  Doc. 1, pp. 5-8.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  As set forth more fully below, Rosebrook's grounds are not cognizable and/or fail on the merits.  Thus, the undersigned recommends that his petition be **DENIED**.

## I.  Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).

---

[1] Doc. page citations are to ECF Doc. page numbers.

The petitioner has the burden of rebutting that presumption by clear and convincing evidence.

28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

The following brief summary of underlying facts is taken from the opinion of the Geauga

County Court of Appeals, Eleventh Appellate District of Ohio:

> {¶ 2} In 2006, Rosebrook was already incarcerated for the attempted aggravated murder of Curtis Frazier. Daniel Carl Ott was supposed to kill Frazier, but he never did. Instead, Ott went to the authorities, recorded his conversations with Rosebrook, and agreed to testify against him. Ott's cooperation with the police resulted in Rosebrook's indictment and 2006 conviction.

> {¶ 3} While incarcerated, Rosebrook hatched a plan to have his snitch killed, and he arranged for Chad South, a fellow inmate who was soon to be released, to kill Ott. Upon South's release, he broke into the home of the wrong Daniel Ott and killed him.

*State v. Rosebrook*, 2017 WL 6623868, at *1 (Oh. Ct. App. Dec. 26, 2017).

### A. Trial Court Proceedings

On June 10, 2015, the Geauga County grand jury charged Rosebrook with conspiracy to

commit aggravated murder (Ohio Rev. Code § 2923.01(A)), aggravated murder (Ohio Rev. Code

§ 2903.01(A)), aggravated murder (felony murder) (Ohio Rev. Code § 2903.01(B)), two counts

of kidnapping (Ohio Rev. Code § 2905.01(A)(2)), and multiple firearm specifications.  Doc. 8-1,

pp. 4-8 (Exhibit 1).[2]  Rosebrook, through counsel, pleaded not guilty.  Doc. 8-1, p. 199 (Exhibit

18).

On September 1, 2016, the state notified the court and Rosebrook of its intent to use other

acts evidence pursuant to Ohio R. Evid. 404(B), to wit: prior acts of conspiracy to kill previous

witnesses against him.  Doc. 8-1, pp. 14-19 (Exhibit 4).  On September 12, 2016, Rosebrook

filed a motion to exclude any evidence of other wrongdoings and alternatively requested an

evidentiary hearing requiring the state to prove that the evidence satisfied one of the exceptions

for admission under the rule.  Doc. 8-1, pp. 20-25 (Exhibit 5).  On September 12, 2016, the

---

[2] The indictment also included specifications for retaliation and murder for hire, which the state dismissed a few days after the indictment issued.  Doc. 8-1, pp. 10-13 (Exhibits 2, 3).

morning of the first day of trial, the trial court referenced Rosebrook's motion and heard the parties' arguments.  The trial court ruled that the prior acts evidence, including a prior conviction, was admissible as it showed a motive for Rosebrook to have Ott killed and that the evidence would be accompanied by a limiting instruction.  Doc. 8-2, pp. 4-5, 10-20 (Tr. Vol. 1).

At trial, the issue of prior acts arose again during the testimony of Detective Keough.  When the state questioned him concerning Rosebrook's prior criminal history, defense counsel objected and moved for a mistrial.  The court permitted Detective Keough to testify as to Rosebrook's prior criminal acts related to the case at trial in order to explain the nature of the detective's investigation.  The court indicated that it would give an instruction that the evidence was received only for the limited purpose of establishing a motive, intent, or plan to commit the charged offenses and may not be considered to prove Rosebrook's character or to show that he acted in conformity with that character.   Doc. 8-3, pp. 65-81 (Tr. Vol. 2).  After Detective Keough testified, the court gave the limiting instruction.  Doc. 8-3, p. 94.  Additionally, the court gave the same limiting instruction after two other state witnesses testified about Rosebrook's prior criminal conduct.  Doc. 8-3, p. 218.

After the state rested, Rosebrook moved for acquittal pursuant to Ohio R. Crim P. 29, which the court denied.  Doc. 8-6; Doc. 8-1, p. 28 (Exhibit 6).

The jury found Rosebrook guilty as charged.  Doc. 8-1, pp. 29-30.  After merging several offenses, the court sentenced Rosebrook to life in prison without eligibility of parole for aggravated murder, ten years for kidnapping, and three years for a firearm specification, all to run consecutively, for an aggregate prison sentence of life without parole.  Doc. 8-1, pp. 44-46 (Exhibit 9).

### B. Direct Appeal

On November 17, 2016, Rosebrook, through new counsel, appealed to the Eleventh District, Ohio Court of Appeals, raising the following assignments of error:

> 1. The trial court erred in denying multiple requests for a mistrial as appellant's constitutional rights to a fair trial, under the confrontation clause, and to due process were violated.

> 2 Appellant suffered from plain error and ineffective assistance of counsel when the state repeatedly used inadmissible prior bad act evidence to show propensity violating the right to a fair trial and due process.

> 3. The trial court erred by denying the Criminal Rule 29 motion because the state provided insufficient evidence that appellant participated in any criminal act.

> 4. The convictions are against the manifest weight of the evidence because they are based on hearsay and the testimony of witnesses who have admitted to providing false testimony.

Doc. 8-1, pp. 48-64 (Exhibits 10-11). On December 26, 2017, the Ohio Court of Appeals affirmed the judgment of the trial court. Doc. 8-1, pp. 117-135 (Exhibit 13).

On February 8, 2018, Rosebrook, pro se, appealed to the Ohio Supreme Court, asserting the following propositions of law:

> 1. The trial court erred in denying multiple requests for a mistrial as appellant's constitutional rights to a fair trial, under the confrontation clause, and to due process were violated.

> 2. Appellant suffered from plain error and ineffective assistance of counsel when the state repeatedly used inadmissible prior bad act evidence to show propensity violating the right to a fair trial and due process.

> 3. The trial court erred by denying the criminal motion because the state provided insufficient evidence that appellant participated Rule 29 in any criminal act. [sic].

> 4. The convictions are against the manifest weight of the evidence because they are based on hearsay and the testimony of witnesses who have admitted to providing false testimony.

Doc. 8-1, pp. 136, 140 (Exhibits 14, 15). On May 23, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). Doc. 8-1, p. 197 (Exhibit 17).

### C.  Federal Habeas Petition

On April 16, 2019, Rosebrook, pro se, filed a Petition for a Writ of Habeas Corpus.  Doc.

1.  In his petition, he raised the following grounds for relief:

> **GROUND ONE:**  The trial court erred in denying multiple request for a mistrial as appellant's constitutional rights to a fair trial, under confrontation clause and due process were violated.
> **Supporting Facts:** The state converted inadmissible hearsay in front of the jury. The detective in petitioner's case, testimony was inadmissible hearsay. The inadmissible hearsay violated his rights under the confrontation clause of the 6th Amendment. Pamela Rosebrook asserted her 5th Amendment right in front of the jury. Her false testimony required a mistrial. The state placed Ms. Rosebrook on the stand at trial to ask prejudicial questions. The court eventually excused the jury and discussed whether or not Ms. Rosebrook could face a perjury charge. There were multiple incidents of inadmissible evidence. Thereby depriving petitioner the right to a fair trial, due to the cumulative errors.

> **GROUND TWO:**  Appellant suffered from plain error and ineffective assistance of counsel when the state repeatedly used inadmissible prior bad acts evidence to show propensity violating the right to a fair trial and due process.
> **Supporting Facts:** In petitioner's case, his counsel challenged the improper 404B evidence, and requested a mistrial, which was denied. The state introduced a 2004 conviction of Mr. Rosebrook more than 12 years prior to his trial, contrary to the 10 year limit rule of Evidence 609, as inadmissible under Rules of Evidence 404(B) & violates his Fifth Amendment rights. Much of the state's case was based on prior convictions of petitioner, thereby violating his right to due process and a fair trial. The trial court allowed testimony about prior attempted murder case, and the prior conviction of petitioner for attempted murder over his counsel's objection. (Tr. 338-339).

> **GROUND THREE:** The trial court erred by denying Crim.R. 29 motion because the state provided insufficient evidence that petitioner participated in any criminal act.
> **Supporting Facts:** Thomas Clarence Scott, a state's witness, was paid in cigarettes to sign a false statement. (Tr. 382-383). Moreover, Scott was an inmate at the time he made the false statement to the police officer regarding the petitioner. However, petitioner's ex-sister-in-law, Pamela Rosebrook, testimony contradicted the testimony of inmate Scott, an inmate who admitted to providing false statements in the past. Even further, Det. Keough testimony was purely speculative as best. Another inmate, Edward Penwell, testified in exchange for the State of Ohio to move him out of state to another prison (Tr. 623) to be closer to his family.

Doc. 1, pp. 5-8.  Respondent filed a Return of Writ, alleging that Rosebrook's grounds for relief are not cognizable and/or fail on the merits.  Doc. 8.  Rosebrook filed a Traverse.  Doc. 15.

## II. Legal Standard

In order to obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause).  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principles and standards flowing from Supreme Court precedent.  *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law.  *Carey*

*v. Musladin*, 549 U.S. 70, 77 (2006); *White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.") (emphasis in original).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Ineffective Assistance of Counsel.** The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims. A petitioner must show that counsel was objectively unreasonable and a reasonable probability that, but for counsel's unreasonable failure, the result of the proceedings would have been different. *Id*., at 687-691, 694. Upon federal habeas review, there is a double layer of deference applied: to counsel, under *Strickland*, and to the state court of appeal's decision on the merits of that claim, under AEDPA. *Kelly v. Lazaroff*, 846 F.3d 819, 832 (6th Cir. 2017) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). The *Strickland* standard also applies to an ineffective assistance of appellate counsel claim. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

### III. Analysis

**A. Ground 1 is not cognizable and/or fails on the merits**

In Ground 1, Rosebrook argues that the trial court erred when it permitted hearsay testimony from Detective Keough and when it denied his motion for a mistrial based on false testimony from Rosebrook's former sister-in-law.  Doc. 1, p. 5.

*Detective Keough*.  Rosebrook does not cite the portions of Keough's testimony he argues were hearsay.  In his brief to the Ohio Court of Appeals, Rosebrook had asserted that the trial court erred when it permitted Detective Keough to testify as to things he was told during his investigation.  Doc. 8-1, p. 70 (citing Tr. 324-326, 329-330); Doc. 8-3, pp. 68-70, 73-74 (Tr. Vol. 2).  The Ohio Court of Appeals summarized Detective Keough's challenged testimony, in which he explained how he began to investigate Rosebrook for the murder of Daniel E. Ott:

> {¶ 62} Retired Detective Joseph Keough from the Geauga County Sheriff's Department recalled that upon investigating Daniel E. Ott's death, nothing made sense and that eventually he looked into Rosebrook upon the suggestion of an Ohio State Highway Patrolman that he investigate another Daniel Ott, Daniel Carl Ott.

> {¶ 63} Keough testified that Rosebrook, Curtis Frazier, and Daniel Carl Ott were involved in a "chop shop" in Logan County and Frazier had agreed to testify against the others. Rosebrook hired Daniel Carl Ott to murder Frazier, but Ott decided not to follow through with the plan, but went to the police instead and eventually testified against Rosebrook [in a prior case in which Rosebrook was ultimately convicted for attempted murder of Frazier].

*State v. Rosebrook*, 2017 WL 6623868, at *7 (Oh. Ct. App. Dec. 26, 2017).  The Ohio Court of Appeals considered Rosebrook's claim:

> {¶ 16} Rosebrook argues he was prejudiced via Detective Keough's testimony that he was in prison based on auto theft charges. As the state contends, defense counsel had already informed the jury in its opening statements that Rosebrook was in prison at the time the murder occurred. And the court sustained the objection to any testimony regarding Rosebrook's auto theft charges. Thereafter and during a recess out of the jury's presence, the trial court denied the request for a mistrial and advised the parties that it would allow limited testimony that Rosebrook was in prison for the attempted murder of Curtis Frazier because it supplies the necessary motive under Evid.R. 404(B).

> {¶ 17} Keough testified, under objection, about the connection between Rosebrook, Curtis Frazier, and Daniel Carl Ott, stating that they were involved in a "chop shop" in Logan County. "Upon the arrest of those individuals, Curtis Frazier had agreed to testify against Joe

Rosebrook. And the information we received is that a hit had been placed on Curtis Frazier by Joe Rosebrook. And he wanted Daniel Carl Ott to do it.

{¶ 18} "Daniel Carl Ott decided not to, and instead, went to the authorities and then wore a wire when the details of the hit were discussed.

{¶ 19} "And that led to the conviction of Joe Rosebrook on the attempted murder charge."

{¶ 20} The trial court repeatedly cautioned the jury to limit its consideration of this testimony as to Rosebrook's motive here, not to show that he is a bad man who acted in conformity with his bad character. Thus, there was no abuse of discretion since this testimony was permissible under Evid.R. 404(B).

{¶ 21} Rosebrook also asserts that Keough's testimony during which he relayed what an Ohio State Highway Patrolman told him was inadmissible hearsay. Keough testified what the patrolman told him in order to explain why Keough began looking into Rosebrook as a suspect. Keough explained that the patrolman was working as an investigator for the National Insurance Crime Bureau and had been investigating a different Daniel Ott, who was a career auto thief. The patrolman told Keough he should look into this different Daniel Ott to see if there was a connection.

{¶ 22} The trial court concluded that this testimony was not hearsay because it was not offered for the truth of the matter asserted, but instead to explain why Keough took certain actions during his investigation. Evid.R.801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

{¶ 23} "Evidence offered to explain an officer's conduct during an investigation is not hearsay and the statements are not offered to prove the truth of the matter asserted. *State v. Lynn* (2000), 137 Ohio App.3d 402, 406, 738 N.E.2d 868." *State v. Neal*, 2d Dist. Champaign Nos. 2000–CA–16 and 2000–CA–18, 2002–Ohio–6786, ¶ 48 (Sept. 30, 1993); *State v. Wilks*, 2d Dist. Montgomery No. 13654, 1993 WL 386246, *4. Here Keough relayed the patrolman's statements to him to show why Keough began investigating Rosebrook via the possibility that this was a case of mistaken identity, not for the truth of the matter asserted. Thus, we find no error.

*Id.*, at *3.

First, this claim is not cognizable because, "[i]n general, alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review." *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012).

Next, this claim fails on the merits. "When an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas

relief."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  "[C]ourts have defined the category of infractions that violate fundamental fairness very narrowly."  *Id*. (citation and internal quotations omitted).  "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they offend [] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  *Id*.  (citation and internal quotations omitted).

Here, Detective Keough testified that, after the investigation into the death of Daniel E. Ott had stalled, he learned that a different officer had investigated a Daniel C. Ott, which, in turn, led him to discover a connection to Rosebrook.  Doc. 8-3, pp. 60-64.  Rosebrook has not shown that the trial court's evidentiary ruling permitting this limited testimony was so egregious that it resulted in a denial of fundamental fairness, violated his due process rights, and warrants habeas relief.  *See Bugh*, 329 F.3d at 512.  Nor can it be said that this testimony violated Rosebrook's rights under the Confrontation Clause.  *See United States v. Gibbs*, 506 F.3d 479, 486-87 (6th Cir. 2007) (out-of-court statement by a parolee to a government agent was not hearsay, but an "out of court statement[] offered for the limited purpose of explaining why a government investigation was undertaken" and did not violate the Confrontation Clause).

*Pamela Rosebrook*.  Rosebrook challenges the trial court's rulings with respect to the testimony of his former sister-in-law, Pamela Rosebrook, asserting that the court erred when it denied his motion for a mistrial based on her testimony.  Doc. 1, p. 5; Doc. 15, p. 5.  The Ohio Court of Appeals explained,

> {¶ 8} This assigned error raises four sub-issues. First, Rosebrook challenges testimony regarding his prior convictions. He also takes issue with the impeachment of his ex-sister-in-law's testimony via her prior inconsistent statement to detectives. Third, he asserts that the cumulative effect of these errors warrants a mistrial. Finally, Rosebrook argues he was denied due process via the denial of access to transcripts from his codefendant's trial.

> {¶ 9} A trial court is entitled to broad discretion in considering a motion for a mistrial,

and our standard of review is whether the trial court abused its discretion. *State v. Love*, 7th Dist. Mahoning No. 02 CA 245, 2006–Ohio–1762, 2006 WL 890994, ¶ 95, citing *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990) paragraph one of the syllabus. The decision to grant a mistrial "is an extreme remedy only warranted in circumstances where a fair trial is no longer possible and it is required to meet the ends of justice." *State v. Bigsby*, 7th Dist. Mahoning No. 12 MA 74, 2013–Ohio–5641, 2013 WL 6797395, ¶ 58, citing *State v. Jones*, 83 Ohio App.3d 723, 615 N.E.2d 713 (2d Dist.1990). A mistrial will only be granted when the substantial rights of a party are adversely affected. *State v. Lukens*, 66 Ohio App.3d 794, 809, 586 N.E.2d 1099 (10th Dist.1990).

\*\*\*

{¶ 24} Next Rosebrook challenges the state's impeachment of his ex-sister-in-law, Pamela Rosebrook. The trial court allowed the state to use her prior inconsistent statement to impeach her credibility under Evid.R. 607(A). The prosecutor initially asked Pamela questions consistent with the summary of her statement to detectives, and she said the summary was "all wrong" and that she did not tell them "half of this crap."

{¶ 25} Thus, pursuant to Evid.R. 607(A), the court was going to allow the state to play the audio recording of her conversation with detectives the next day. But when her testimony began, she invoked her Fifth Amendment right not to testify. Contrary to Rosebrook's assertion, the trial court did not hold Pamela in contempt. Instead, upon Pamela's invocation of her right not to testify, the court, outside the presence of the jury, appointed her counsel to help her avoid a contempt charge and then recessed the trial for the day.

{¶ 26} After consulting with an attorney and being granted immunity for her testimony, Pamela was again called to testify. The state was permitted to play portions of her recorded interview with detectives when she testified contrary to her prior statements. She confirmed that it was her voice in the recordings, and that she told detectives that her ex-husband Jeff handled some of Joe's money while he was in prison, and that Joe "might" have had hundreds of thousands of dollars.

{¶ 27} Pursuant to Evid.R. 607(A), the court's decision to allow the state to play the audio recording of her conversation with detectives was permissible. The state established it was surprised by her testimony to the contrary and that it was affirmatively damaged since the state was unaware that Pamela was going to change her story from her statements made to detectives a month prior. *State v. O'Brien*, 5th Dist. Licking No. 2004CA00034, 2004–Ohio–7275, ¶ 18.

{¶ 28} Furthermore, the court issued a limiting instruction to the jury, stating that the use of Pamela's prior statements was "for impeachment purposes. It relates to the credibility of the witness, and you may consider it for that purpose only. It is not offered for, nor may you consider it, to prove the acts or elements of the charged offenses." Thus, because the trial court allowed the testimony consistent with Evid.R. 607(A), we find no error.

*Rosebrook*, 2017 WL 6623868, at *1, 3-4.

The Ohio Court of Appeals applied the correct standard of review to Rosebrook's claim that the trial court erred in denying his motion for a mistrial.  *See Illinois v. Somerville*, 410 U.S. 458, 461-463 (1973) (it is settled law that the trial court has broad discretion to consider whether to declare a mistrial taking all the circumstances into consideration, citing *U.S. v. Perez*, 9 U.S. 579 (1824)); *Renico v. Lett*, 559 U.S. 766, 774 (2010).  Its decision was not unreasonable.  *See also Conner v. LaRose*, 2017 WL 4155352, at *9-13 (N.D.Ohio May 31, 2017) (denying federal habeas relief and finding that the Ohio Court of Appeals reasonably affirmed the trial court's denial of the petitioner's motion for mistrial based on its decision to permit the state to play a prior, inconsistent recording of a witness's statement to a detective used to impeach the credibility of the witness who claimed at trial that he didn't remember what he told the detective).

Finally, to the extent that Rosebrook alleges that he is entitled to habeas relief due to the cumulative errors described above (Doc. 1, p. 5), such a claim is not cognizable.  *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) (claims of cumulative error are not cognizable on federal habeas review because the Supreme Court has not spoken on this issue).

**B. Ground 2 is not cognizable and/or fails on the merits**

In Ground 2, Rosebrook argues that (1) the trial court erred when it denied a mistrial due to the state's use of inadmissible prior bad acts evidence and (2) trial counsel was ineffective for not objecting when the state used prior bad acts evidence to show Rosebrook's propensity to commit the crimes charged.  Doc. 1, p. 6.  The Ohio Court of Appeals considered these claims as follows:

> {¶ 10} Rosebrook first asserts a mistrial was warranted in light of the introduction of testimony as to his other criminal offenses and resulting prejudice.

{¶ 11} "In Ohio, the general rule is that 'the introduction of evidence tending to show that a defendant has committed another crime wholly independent of the offense for which he is on trial is prohibited.'" *State v. Breedlove*, 26 Ohio St.2d 178, 183, 271 N.E.2d 238 (1971), citing *State v. Hector*, 19 Ohio St.2d 167, 249 N.E.2d 912 (1969), paragraph one of the syllabus. Exceptions exist, however, including those in Evid.R. 404(B), which states:

{¶ 12} "**Other Crimes, Wrongs or Acts**. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."

{¶ 13} As for evidence of Rosebrook's prior convictions, the state offered evidence of Rose[brook]'s criminal past to establish his motive to have Ott killed. Early on in the case, the state informed the court and defense counsel of its intent to use Rose[brook]'s prior criminal record to show his reason for having Ott killed. Rose[brook] opposed the introduction of this evidence, and the issue was argued the first day of trial, outside the jury's presence. The issue again arose during Detective Keogh's testimony, and the trial court issued its limiting instruction permitting the testimony following a hearing, stating:

{¶ 14} "I am going to allow it for that limited purpose, that is, to show why the Detective investigated as he did and his actions. I am going to limit it to the prior record connected with this offense, and I will give a limiting instruction to the effect of that evidence at the appropriate time that the defense asks. And I will say that the evidence was received only for a limited purpose. It was not received, and you may not consider it, to prove the character of the Defendant in order to show that he acted in conformity with that character.

{¶ 15} "If you find that the evidence of the other wrongs or acts is true and that you believe that the Defendant committed them, you may consider that only for the purposes of deciding whether it proves a motive, intent or purpose or plan to commit the offense charged in this trial."

{¶ 16} Rosebrook argues he was prejudiced via Detective Keough's testimony that he was in prison based on auto theft charges. As the state contends, defense counsel had already informed the jury in its opening statements that Rosebrook was in prison at the time the murder occurred. And the court sustained the objection to any testimony regarding Rosebrook's auto theft charges. Thereafter and during a recess out of the jury's presence, the trial court denied the request for a mistrial and advised the parties that it would allow limited testimony that Rosebrook was in prison for the attempted murder of Curtis Frazier because it supplies the necessary motive under Evid.R. 404(B).

{¶ 17} Keough testified, under objection, about the connection between Rosebrook,

Curtis Frazier, and Daniel Carl Ott, stating that they were involved in a "chop shop" in Logan County. "Upon the arrest of those individuals, Curtis Frazier had agreed to testify against Joe Rosebrook. And the information we received is that a hit had been placed on Curtis Frazier by Joe Rosebrook. And he wanted Daniel Carl Ott to do it.

{¶ 18} "Daniel Carl Ott decided not to, and instead, went to the authorities and then wore a wire when the details of the hit were discussed.

{¶ 19} "And that led to the conviction of Joe Rosebrook on the attempted murder charge."

{¶ 20} The trial court repeatedly cautioned the jury to limit its consideration of this testimony as to Rosebrook's motive here, not to show that he is a bad man who acted in conformity with his bad character. Thus, there was no abuse of discretion since this testimony was permissible under Evid.R. 404(B).

***

{¶ 32} Rosebrook's second assigned error alleges:

{¶ 33} "Appellant suffered from plain error and ineffective assistance of counsel when the state repeatedly used inadmissible prior bad act evidence to show propensity violating the right to a fair trial and due process."

{¶ 34} In order to succeed on an ineffective assistance of counsel claim, an appellant must establish his counsel erred and resulting prejudice.

{¶ 35} "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)

{¶ 36} "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶ 37} Rosebrook claims his trial counsel erred in allowing the admission of his prior bad acts. In particular, he argues counsel should have objected to Detective Keough's testimony that Rosebrook was already serving time in prison for attempted murder and that this reference constitutes plain error. As stated, Keough testified, under objection, about the connection between Rosebrook, Curtis Frazier, and Daniel Carl Ott and Rosebrook's reason for wanting Daniel Carl Ott killed.

{¶ 38} Rosebrook also continues to assert that his prior offense of conspiracy to commit the aggravated murder of Curtis Frazier should not have been admitted in light of the

14

resulting prejudice. As explained under Rosebrook's first assigned error, however, the trial court allowed the testimony pursuant Evid.R. 404(B) with the requisite limiting instructions to the jury.

{¶ 39} As stated previously, defense counsel pointed out in openings statements that Rosebrook was in prison at the time of the offense, and half of the witnesses were inmates either during the trial or knew Rosebrook while serving prison time with him. And in light of the nature of the offense, which arose because the intended victim "snitched" on Rosebrook for another offense, the references to Rosebrook's prior offense were permissible.

{¶ 40} Accordingly, Rosebrook was not denied effective assistance of trial counsel because even assuming his counsel erred, Rosebrook cannot establish prejudicial harm as a result. Accordingly, his second assigned error lacks merit.

*Rosebrook*, 2017 WL 6623868, at *2-5.

**Trial court error**.  First, as with Ground 1, this claim is not cognizable because, "[i]n general, alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review." *Moreland*, 699 F.3d at 923.

Next, a petitioner is not entitled to federal habeas relief based on a theory that the admission of evidence of prior bad acts was error because the evidence was used to show propensity to commit the charged act. *Bugh*, 329 F.3d at 512 ("There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence[,]" citing *Estelle v. McGuire*, 502 U.S. 62, 75 (1991)); *Flakes v. Campbell*, 2019 WL 3814338, at *2 (6th Cir. June 5, 2019).

Moreover, the prior bad acts evidence at issue was not admitted to show Rosebrook's propensity to commit the charged act.  Rather, it was used to show motive and was accompanied by a proper limiting instruction, as the Ohio Court of Appeals observed.  It cannot be said that the Ohio Court of Appeals' decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.  This claim fails on the merits.

*Ineffective assistance of counsel*.  In his Traverse, Rosebrook maintains that trial counsel was ineffective "in proceeding to trial…without the benefit of the trial court rendering a ruling on [Rosebrook's] motion [to exclude evidence relating to other crimes, wrongs or acts]."  Doc. 15, p. 5.  His assertion is belied by the record, which shows that the trial court ruled on Rosebrook's motion prior to trial, as the Ohio Court of Appeals remarked.  See also Doc. 8-2, pp. 4-5, 10-20 (Tr. Vol. 1, trial court taking up Rosebrook's motion prior to the start of trial and ruling that the state can use the evidence to show motive subject to a proper limiting instruction).  His assertion that trial counsel did not object to Detective Keough's testimony referencing prior criminal acts (Doc. 15, pp. 6, 8) is not well taken because, as the Ohio Court of Appeals noted, defense counsel did object to Keough's testimony.  See also Doc. 8-3, pp. 48, 64-83 (Tr. Vol. 2, Rosebrook's counsel objecting to Detective Keough's testimony regarding prior criminal acts and the resultant discussion, outside the jury's presence, that the trial court had with counsel before ruling that relevant prior acts evidence is permissible with a proper limiting instruction).  The Ohio Court of Appeals' factual determination and its decision is reasonable.  This claim fails on the merits.

### C. Ground 3 fails on the merits

In Ground 3, Rosebrook argues that there was insufficient evidence presented at trial that he participated in any criminal act.  Doc. 1, p. 8.  He asserts that a state witness, Scott, "was paid in cigarettes to sign a false statement" and had given false statements in the past; Scott's testimony was contradicted by Pamela Rosebrook's testimony; Detective Keough's testimony was "speculative"; and that another inmate, Penwell, testified in exchange for the state agreeing to move him to another prison in another state.  Doc. 1, p. 8.

In reviewing a claim that a petitioner's conviction was not supported by sufficient evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable

to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Under this standard, deference is due the jury's determination.  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  The standard is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Thus, in making a determination as to sufficiency of the evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury."  *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).  "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt."  *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies.  *Brown*, 567 F.3d at 205; *Snyder v. Marion Corr. Inst., Warden*, 608 Fed. App'x 325, 327 (6th Cir. 2015) (indicating that, where a petitioner's "claims arise in the context of a § 2254 petition, [the court's analysis] must be refracted through yet another filter of deference") (citing *Coleman v. Johnson*, 566 U.S. 650 (2012), which reaffirmed that sufficiency of the evidence claims under *Jackson* "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference").  Accordingly, even if this Court were to conclude that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable."  *Brown*, 567 F.3d at 205 (emphasis in original); *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

The Ohio Court of Appeals considered Rosebrook's sufficiency of the evidence claim:

17

{¶ 41} We address Rosebrook's third and fourth assigned errors collectively, which assert:

{¶ 42} "The trial court erred by denying the Criminal Rule 29 motion because the state provided insufficient evidence that appellant participated in any criminal act.

{¶ 43} "The convictions are against the manifest weight of the evidence because they are based on hearsay and the testimony of witnesses who have admitted to providing false testimony."

{¶ 44} "A challenge to the sufficiency of the evidence supporting a conviction requires that we consider 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We will not 'disturb a verdict on appeal on sufficiency grounds unless "reasonable minds could not reach the conclusion reached by the trier-of-fact."' *Ketterer*, 111 Ohio St.3d 70, 2006–Ohio–5283, 855 N.E.2d 48, at ¶ 94, quoting *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997).

{¶ 45} "In contrast, a manifest-weight challenge 'concerns "the inclination of the *greater amount of credible evidence * * ** to support one side of the issue rather than the other."' (Emphasis sic.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990). A manifest-weight challenge requires us to consider the entire record, including the credibility of the witnesses, the weight of the evidence, and any reasonable inferences, and determine whether '"the [panel] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."' *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); accord R.C. 2953.02." *State v. Montgomery*, 148 Ohio St.3d 347, 2016–Ohio–5487, 71 N.E.3d 180, ¶ 74–75, reconsideration granted in part, 147 Ohio St.3d 1438, 2016–Ohio–7677, 63 N.E.3d 157.

{¶ 46} A finding that a conviction is supported by the manifest weight of the evidence, necessarily includes a finding that the conviction is supported by sufficient evidence. *State v. Brady*, 7th Dist. Mahoning No. 13 MA 88, 2014–Ohio–5721, ¶ 26; *State v. McGowan*, 7th Dist. Jefferson No. 14JE37, 2016–Ohio–48, ¶ 4.

{¶ 47} A conviction is "the combined occurrence of a finding of guilty and the imposition of a sentence." *State v. Payne*, 11th Dist. Ashtabula No. 2014–A–0001, 2014–Ohio–4304, ¶ 17, citing, *State v. Henderson*, 58 Ohio St.2d 171, 178, 389 N.E.2d 494 (1979).

{¶ 48} Here, the jury found Rosebrook guilty of multiple offenses, but the court only imposed sentences on two and a gun specification. The others merged for sentencing. Thus, we only address the weight and sufficiency of Rosewood's aggravated murder conviction, in violation of R.C. 2903.01(A), and his kidnapping of Mary Ann Ricker offense in violation of R.C. 2905.01(A)(2) and the gun specification under R.C.

2941.145(A). *Payne*, supra.

{¶ 49} Rosebrook was indicted and charged with murder for hire or being complicit in the aggravated murder of Ott. A charge of complicity may be stated in terms of the principal offense. R.C. 2923.03(F); *State v. Skatzes*, 104 Ohio St.3d 195, 2004–Ohio–6391, 819 N.E.2d 215, ¶ 32. Rosebrook was on notice that evidence was going to be presented that he was complicit in the aggravated murder of Ott via his soliciting, hiring, and conspiring with South to kill Daniel Carl Ott.

{¶ 50} Under the theory of accomplice liability, anyone who is an accomplice to a crime shall be prosecuted and punished as if she were a principal offender. R.C. 2923.03(F). An accomplice is a person "acting with the kind of culpability required for the commission of an offense," and can act by soliciting and procuring another to commit the offense or via conspiring with another to commit the crime. R.C. 2923.03(A)(1) and (3).

{¶ 51} Rosebrook was convicted of aggravated murder in violation of R.C. 2903.01(A), which prohibits a person from "purposely, and with prior calculation and design, caus[ing] the death of another * * *."

{¶ 52} He was also convicted of kidnapping Mary Ann Ricker in violation of R.C. 2905.01(A)(2) and with a gun specification pursuant to R.C. 2941.145(A).

{¶ 53} R.C. 2905.01(A)(2) states in part,

{¶ 54} "(A) No person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

{¶ 55} "* * *

{¶ 56} "(2) To facilitate the commission of any felony or flight thereafter * * *."

{¶ 57} R.C. 2941.145(A) provides for a three-year prison term if the offender had a firearm on or about the person or under his control while committing the offense and displayed the firearm, brandished the firearm, or used it to facilitate the offense.

{¶ 58} Here, each of appellant's convictions is supported by sufficient evidence and is not against the manifest weight of the evidence.

{¶ 59} Mary Ann Ricker was Daniel E. Ott's live-in girlfriend. She testified that she and Daniel E. Ott were sleeping when she heard her dog, which woke her. She then heard footsteps and saw a person dressed in dark clothing with a shotgun inside their home. The man ordered her and Ott to roll onto their stomachs, which they did. The intruder asked Ott what his name was and tied Ott up with tape. Ricker could hear the sound of the tape.

{¶ 60} Ricker then recalls Ott standing up and running toward the intruder, who shot him in the chest. Ricker heard the shot being fired. She then got up and saw a Ford Taurus

backing out of their driveway. Ricker grabbed a towel and held it to Ott's wound until the police arrived. Ott died later that day from his gunshot wound. Ricker had no idea who had killed Ott.

{¶ 61} Sergeant Graley with the Geauga County Sheriff's Department was the first officer at the home. He found Ott with duct tape on his wrists and Ricker hysterical and covered with blood.

{¶ 62} Retired Detective Joseph Keough from the Geauga County Sheriff's Department recalled that upon investigating Daniel E. Ott's death, nothing made sense and that eventually he looked into Rosebrook upon the suggestion of an Ohio State Highway Patrolman that he investigate another Daniel Ott, Daniel Carl Ott.

{¶ 63} Keough testified that Rosebrook, Curtis Frazier, and Daniel Carl Ott were involved in a "chop shop" in Logan County and Frazier had agreed to testify against the others. Rosebrook hired Daniel Carl Ott to murder Frazier, but Ott decided not to follow through with the plan, but went to the police instead and eventually testified against Rosebrook.

{¶ 64} Upon investigating a possible connection with the murder of Daniel E. Ott, Keough monitored Rosebrook's recorded prison phone calls and heard references to conversations that were not in his other recorded prison calls. Thus, Keough believed that Rosebrook had access to a cellular telephone. The investigation into Daniel E. Ott's murder eventually stalled, and Keough retired.

{¶ 65} Clarence Scott was an inmate at the Northeast Ohio Correctional Institution at the same time as Rosebrook. Scott was Curt Frazier's son-in-law. He recalls Rosebrook befriending him and sharing his list of people he wanted dead. Daniel Carl Ott was at the top of his list because Ott had snitched on him and "wired up" on Rosebrook. He asked Scott if he knew anyone who would be interested in "doing some dirt." Rosebrook spoke about paying someone $10,000 before and $10,000 after. Rosebrook told Scott that his brother Jeff handled his money. Scott heard Rosebrook mention this offer around fellow inmates Chad South and Steve Clemens.

{¶ 66} Sometime later and while still in prison, Scott saw on the news that a Daniel Ott was shot. Chad South had already been released from prison before Scott saw that Ott was killed.

{¶ 67} Rosebrook argues that Clarence Scott's testimony is incredible because he admitted to submitting a false affidavit in exchange for cigarettes. This evidence was before the jury for it to consider and weigh Scott's credibility.

{¶ 68} Curt Frazier testified that he had bought and sold stolen car parts with Rosebrook. He testified that Rosebrook went to prison for conspiring with Daniel Carl Ott to have him killed, but Ott wore a wire and assisted authorities in prosecuting Rosebrook.

{¶ 69} Frazier was relaying information his son-in-law, Scott, told him while in prison

with Rosebrook to a Detective John Stout, who later got charged with crimes and is no longer a detective.

{¶ 70} Keith Levan, a retired Logan County Detective, explained that he had asked Curt Frazier, who was in jail at the time, to help him obtain information from Rosebrook via his son-in-law about a matter unrelated to the murder of Daniel Carl Ott.

{¶ 71} Detective Juanita Vetter also testified for the state. She explained that the Geauga County Sheriff's office interviewed 50–70 people while investigating this murder and that all leads had come up empty until Keough looked up the victim in a police database and noticed that another investigator had recently searched Ott's name. The detectives then considered that they were investigating a murder based on mistaken identity. Vetter advised that Daniel Carl Ott was a professional car thief who was much older than the victim, Daniel E. Ott.

{¶ 72} Vetter met with Clarence Scott, who told her that Rosebrook had been recruiting inmates to kill a snitch. Scott also advised her that Rosebrook had a cell phone in prison. Upon tracing certain phone calls between the phone Rosebrook had in prison, Vetter determined that his phone was used to call a phone in the name of Bonnie Rothen, who lived with Chad Smith [sic] and his girlfriend at the time of the murder. Rosebrook eventually got in trouble for having a cellular phone in prison.

{¶ 73} Another inmate told Vetter that South did not want to kill Ott, but that he had to since he charged at him.

{¶ 74} Rosebrook's ex-sister-in-law, Pamela Rosebrook, testified that she was married to Rosebrook's brother Jeff for 39 years. Jeff handled some of Joe's money while he was in prison.

{¶ 75} As previously stated, Pamela's testimony was inconsistent with her statement to detectives. She was given a copy of her summary of her audio statement and said it was "all wrong." She denied ever saying Joe Rosebrook was dangerous and that she was afraid of him. She also denied telling them that Jeff was in charge of Joe's money while he was in prison or that Jeff was holding hundreds of thousands of dollars of Joe's money.

{¶ 76} The next day she was again asked about her statements to the detectives and she invoked her Fifth Amendment right not to answer. She was eventually granted immunity with regard to her testimony.

{¶ 77} Her testimony about the recordings is in evidence following the trial court's determination that she was impeached via her prior inconsistent testimony. Upon being confronted with the prior recordings of her statements to detectives, Pamela testified that she told detectives that Jeff "may" have had hundreds of thousands of dollars in envelopes and that he kept a ledger of the money in the envelopes. She agreed that Jeff was in control of some of Joe's money while he was in prison, but that she really did not know how much money Jeff handled for Joe and that she was not afraid of him, because she hardly ever saw him.

{¶ 78} Bonnie Rothen explained that she knew Chad South because she was friends with his girlfriend, Kathy Baker. Rothen lived with Baker and her children when South was released from prison. He moved in as well and would often borrow her cell phone.

{¶ 79} Edward Penwell, another inmate, who was serving a life sentence for murder, testified and explained that for a time he was incarcerated with Rosebrook. Rosebrook told him he wanted his snitch killed, but at the time of trial, Penwell could not remember the snitch's name.

{¶ 80} Penwell introduced Rosebrook to Chad South and Timmy Minehart. South was getting out of prison soon and "wanted to get back on his feet." Rosebrook told them he wanted the snitch killed and that Chad and Timmy were supposed to work together and get $10,000 each in cash from Rosebrook's brother consisting of $10,000 before and $10,000 after he was dead. The group discussed the hit three or four times, and Penwell told South how to avoid getting caught.

{¶ 81} Rosebrook claims that Penwell's testimony is speculative because he said he remembered Rosebrook saying he wanted to kill somebody, but he could not remember who he wanted dead. Although Penwell did not know or recall the name of the snitch, he nevertheless recounted that Rosebrook sought to have his snitch killed and that the conversations Penwell relayed at trial had happened years before his trial testimony.

{¶ 82} Rosebrook also argues that Keough improperly speculated in his testimony that Rosebrook had access to a cell phone in prison. However, Vetter confirmed that Rosebrook was charged with having a cell phone in prison, that the phone was used to call Rosebrook's friends and family, and that his voice was heard on the recordings.

{¶ 83} Rosebrook also takes issue with the lack of evidence showing that any money was exchanged between him and South. However, the actual exchange of money or payment was not required to establish that Rosebrook solicited or conspired with South to kill Daniel Carl Ott. To the contrary, the evidence shows that Rosebrook conspired with Chad South to "purposely, and with prior calculation and design," cause the death of his snitch, Daniel Carl Ott. Pursuant to their conspiracy, South entered the home of Daniel E. Ott, tied him up with duct tape, and ordered Ott and Ricker onto their stomachs while holding a shotgun. South then shot and killed Daniel E. Ott when Ott charged at him.

{¶ 84} Based on the foregoing, Rosebrook's convictions for aggravated murder and kidnapping with a firearm specification are not against the manifest weight of the evidence, and are likewise supported by sufficient evidence to establish the essential elements of the crimes. Accordingly, his third and fourth assignments of error lack merit.

*Rosebrook*, 2017 WL 6623868, at *5-9.

The Ohio Court of Appeals properly asked whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt and answered in the affirmative.  *See Jackson*, 443 U.S. at 319.  As the state Court of Appeals explained, the jury heard evidence that Scott had previously given a false statement (Doc. 8-3, Tr. Vol. 2, p. 127) and Penwell testified in exchange for being moved to another prison (Doc. 8-5, Tr. Vol. 4, p. 76).  Thus, evidence regarding those witnesses' credibility was presented to the jury, which a federal habeas court does not re-evaluate.  *Brown*, 567 F.3d at 205 (a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury.");  *Matthews*, 319 F.3d at 788.  As described above in the undersigned's discussion of Ground 1, the jury also heard Pamela Rosebrook testify; first inconsistent with, and then consistent with, Scott's testimony.  *See id*.  And Detective Keough's testimony regarding his belief that Rosebrook had a cell phone was not unduly speculative, as Detective Vetter testified at great length about the cell phone linked to Rosebrook in prison, as the Ohio Court of Appeals noted.  See also, e.g., Doc. 8-5, pp. 137, 144, 168-169 (Vetter's testimony).   Neither the Ohio Court of Appeals' factual findings or its decision is unreasonable.  Therefore, this Court must defer to the state Court of Appeals' sufficiency determination.  *Brown*, 567 F.3d at 205.  Ground 3 fails on the merits.

**IV**. **Conclusion and Recommendation**

For the reasons explained above, the undersigned recommends that the Court deny

Rosebrook's Petition.


Dated: April 13, 2020

/s/ Kathleen B. Burke
Kathleen B. Burke
United States Magistrate Judge




**<u>OBJECTIONS</u>**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts
within fourteen (14) days after the party objecting has been served with a copy of this Report and
Recommendation.  Failure to file objections within the specified time may waive the right to
appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see
also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).